**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.              **Case No. 08-CR-136**

**MURL MONROE**
   **Defendant.**

---

### SENTENCING MEMORANDUM

  Defendant Murl Monroe pleaded guilty to distributing crack cocaine, contrary to 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), and I set the case for sentencing. In imposing sentence, I calculated the advisory guideline range, considered the government's motion for a guideline departure under U.S.S.G. § 5K1.1, and then determined the final sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See Rita v. United States, 127 S. Ct. 2456, 2465 (2007); see also Gall v. United States, 128 S. Ct. 586, 596-97 (2007); United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008).

### I. GUIDELINES

  Defendant's pre-sentence report ("PSR") set a base offense level of 24 under U.S.S.G. § 2D1.1(c)(8), then subtracted 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 21. Based on a total of 9 criminal history points, the PSR set a criminal history category of IV. However, the report also determined that defendant qualified as a career offender under U.S.S.G. § 4B1.1 based on his prior convictions for cocaine delivery and fleeing, which increased his final offense level to 29 and his criminal history category to VI. Level 29 and category VI produce an imprisonment range of 151-188 months.

Defendant objected to the career offender designation, arguing that the fleeing conviction did not qualify as a crime of violence.[1] Defendant acknowledged the Seventh Circuit cases holding that fleeing under Wisconsin law is categorically a crime of violence, see United States v. Rosas, 410 F.3d 332 (7th Cir. 2005); United States v. Howze, 343 F.3d 919 (7th Cir. 2003), but argued that Begay v. United States, 128 S. Ct. 1581 (2008), in which the Supreme Court held that drunk driving was not a violent felony, required a different approach.[2] However, the Seventh Circuit has held, post-Begay, that fleeing an officer in a vehicle under Indiana's similar statute is a crime of violence, see United States v. Spells, 537 F.3d 743, 752 (7th Cir. 2008), cert. denied, 129 S. Ct. 2379 (2009); see also United States v. Jennings, 544 F.3d 815, 819-20 (7th Cir. 2008), and I have made the same finding under Wisconsin's statute, see United States v. Cross, No. 07-CR-29, 2008 WL 4103874, at *1 (E.D. Wis. Aug. 29, 2008); United States v. Lee, No. 07-CR-131, 2008 WL 2595190, at *1 (E.D. Wis. June 27, 2008). Other courts have likewise concluded that fleeing-type offenses remain crimes of violence after Begay. See, e.g., United States v. LaCasse, 567 F.3d 763 (6th Cir. 2009); United States v. Harrimon, 568 F.3d 531 (5th Cir. 2009); United States v. West, 550 F.3d 952 (10th Cir. 2008) (collecting cases).

Defendant also cited United States v. Templeton, 543 F.3d 378 (7th Cir. 2008), in which the court held that escape under Wisconsin law is not necessarily a crime of violence. The Supreme Court subsequently held in Chambers v. United States, 129 S. Ct. 687 (2009), that

---

[1] He did not contest the other career offender predicate.

[2] Begay concerned the "violent felony" provision of the Armed Career Criminal Act, rather than the "crime of violence" provision of the career offender sentencing guideline. However, the Seventh Circuit interprets these two provisions the same way. See, e.g., United States v. Templeton, 543 F.3d 378, 380 (7th Cir. 2008).

2

failure to report for penal confinement is not a crime of violence. Those decisions did not compel a different result. Howze did compare fleeing to escape, but Templeton and Chambers concerned escape statutes that covered both actual breakouts, on the one hand, and walkaways or passive failures to report on the other; the latter type of offense does not involve the aggressive conduct required for a crime of violence. Fleeing in a vehicle is not comparable to a walkaway or passive failure to report; rather, it typically does involve aggressive behavior, which presents a serious potential risk of physical injury to another. Thus, while the Seventh Circuit has not revisited the issue since Chambers, the Sixth Circuit in LaCasse, 567 F.3d at 766-67, and the Fifth Circuit in Harrimon, 568 F.3d at 536-37, both held that Chambers does not change the result regarding fleeing offenses, and I agreed.

Defendant also cited United States v. Smith, 544 F.3d 781 (7th Cir. 2008) and Jimenez-Gonzalez v. Mukasey, 548 F.3d 557 (7th Cir. 2008), but those cases concern the mens rea required for a crime of violence. Fleeing under Wisconsin law is not a crime with a mens rea of recklessness or negligence; nor is it a strict liability crime, like drunk driving; rather, it requires that the offender act intentionally. See, e.g., State v. Sterzinger, 256 Wis. 2d 925, 930-31 (Ct. App. 2002).

Finally, defendant objected to the facts related to the fleeing offense set forth in the PSR, presenting police reports, photos and a state pre-sentence report regarding that offense. However, in determining whether an offense qualifies as a career offender predicate, the court considers the crime of conviction, not the defendant's actual conduct. If a single statute may be divided into multiple crimes, some of which are crimes of violence, others of which are not, the court may consider limited additional materials, such as the charging document, terms of a plea agreement or transcript of the plea colloquy, or some comparable judicial record. But

3

it may not, even under this modified categorical approach, look to police reports or similar documents.  See Spells, 537 F.3d at 748-49; see also Shepard v. United States, 544 U.S. 13, 16 (2005); United States v. McGee, 408 F.3d 966, 989 (7th Cir. 2005).

Defendant contended that fleeing may be committed in multiple ways, and the statute mentions wilful or wanton disregard of the officer's signal so as to interfere with or endanger other vehicles or persons, increasing the speed of the vehicle, or extinguishing lights in an attempt to elude or flee.  See Wis. Stat. § 346.04(3).  Defendant argued that shutting off the lights does not pose a serious risk.  The point was debatable, but as defendant conceded, his offense was not of that variety.  Rather, he asked me to determine that his specific conduct did not actually create a serious risk of injury.  This was not an inquiry I could undertake.[3]  See Spells, 537 F.3d at 748 ("In evaluating whether a crime constitutes a 'violent felony,' courts are instructed to examine 'the crime of conviction, not the defendant's actual conduct or the details of the proceedings in state court.'") (quoting United States v. Perkins, 449 F.3d 794, 796 (7th Cir. 2006)).  I was permitted to consider the specific nature of defendant's prior convictions under § 3553(a), but the guideline objection failed.  I therefore adopted the guideline calculations set forth in the PSR: offense level 29, criminal history category VI, and 151 to 188 months imprisonment range.

---

[3]Defendant argued that he did not initially realize that the police were after him, that he drove just a short distance before voluntarily pulling over, and that no other vehicles on the road were put in danger.  According to the police reports defendant submitted, defendant fled at a high rate of speed, nearly colliding with a police car, ran a red light, causing other cars to stop or slow to avoid a collision, then threw a clear plastic baggie of suspected cocaine out the window before stopping.  The criminal complaint charging defendant with fleeing basically said the same thing.

4

## II. DEPARTURE

**A.     Substantial Assistance Factors**

The government moved for a 4-level departure under U.S.S.G. § 5K1.1 in order to reward defendant for his substantial assistance. In ruling on such a motion, I consider:

(1) . . . the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

I give substantial weight to the government's evaluation of the extent of the defendant's assistance, U.S.S.G. § 5K1.1 cmt. n. 3, but the extent of the departure is within my discretion. In attempting to quantify the departure, I typically use the method suggested by the Seventh Circuit of granting something on the order of a 2-level adjustment for each factor found to be fully present, with a lesser reduction for those factors partially present. United States v. Matthews, 463 F. Supp. 2d 916, 918 (E.D. Wis. 2006).

**B.     Analysis**

The government indicated that defendant agreed to cooperate after his arrest, turning over a sum of cash believed to be the proceeds of drug trafficking. He participated in several debriefs, providing information about his own involvement in drug trafficking, as well as the activities of others. The government stated that he was truthful and his information was

5

consistent with corroborating information from other sources.

Defendant specifically provided information about one of his drug sources, who was then arrested. Acting through another individual, he actively cooperated, which resulted in more than fifty controlled buys of narcotics, which by the time of sentencing had resulted in six arrests, with more to come. All six of the arrested suspects also agreed to cooperate with the government.

Under the first factor, I awarded 2 levels because defendant's information was significant and useful. He provided information about other suppliers and distributors of cocaine and marijuana. His cooperation led to multiple arrests, with more possible. He also turned in drug proceeds. Under the second factor, I awarded 2 levels as well, as the government found his information truthful and complete, corroborated through surveillance, physical evidence and other witness statements. I also awarded 2 levels under the third factor; although defendant's cooperation was limited to providing information and turning in money, a person acting on his behalf provided significant pro-active cooperation, resulting in more than fifty controlled buys. I awarded 1 level under the fourth factor, based on the government's statement that defendant and the other person who cooperated on his behalf put themselves at risk. Finally, I awarded no reduction under the fifth factor, as the record contained no evidence of timeliness. Therefore, I granted a total reduction of 7 levels, making the range 84-105 months.

### III. SECTION 3553(a)

**A. Sentencing Factors**

In imposing the final sentence, I considered the § 3553(a) factors:

(1)    the nature and circumstances of the offense, and the history and characteristics of the defendant;

6

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). The district court must give respectful consideration to the guidelines in determining a sufficient sentence, Gall, 128 S. Ct. at 594, but it may not presume that the guideline sentence is the correct one, Rita, 127 S. Ct. at 2465. Rather, it is the statute's parsimony provision, quoted above, which serves as the "overarching" command of § 3553(a). Kimbrough v. United States, 128 S. Ct. 558, 570 (2007).

**B. Analysis**

**1. The Offense**

Defendant sold small amounts of crack cocaine to a confidential informant on seven

7

occasions between November 2007 and April 2008. The specific transactions were as follows: 1.28 grams on November 30, 2007; 2.8 grams on December 11, 2007; 3.19 grams on December 19, 2007 (this related to the specific offense of conviction); 3.03 grams on January 16, 2008; 2.39 grams on January 17, 2008; 1.51 grams on January 25, 2008; and 3.3 grams on April 23, 2008, for a total of 17.5 grams.

### 2.     **The Defendant**

Defendant was twenty-six years old, with a fairly significant prior record. In 2001, he was convicted of operating a motor vehicle without owner's consent. He was placed on probation for that offense, which was revoked based on his 2002 cocaine delivery conviction, for which he received a sentence of 18 months prison followed by 18 months extended supervision. Although he performed unevenly on supervision he was able to discharge in 2005. Finally, in 2006 he was convicted of the fleeing offense discussed above. The court sentenced him to 18 months prison imposed and stayed for three years probation with 90 days condition time, but he was revoked after his arrest in the present case. Defendant seemed to be doing well on supervision prior to his arrest, reporting as directed, paying his financial obligations and testing negative; unfortunately, we now know that he continued to sell crack cocaine.

Defendant was in a relationship, and his girlfriend described him as a good person and good father to their two year old son. He had another child from a previous relationship and owed over $3300 in back child support. Defendant told the PSR writer that he was upset with himself because he allowed himself to be taken away from his kids.

Defendant admitted that alcohol and marijuana were a problem for him, in the past, but stated that he stopped using when placed on probation in 2006. He completed treatment during a previous state prison sentence. He also earned his HSED in state prison, after

8

previously dropping out of school. He compiled a decent employment record; during his latest period in the community, he did janitorial work for R & S Performance from November 2006 to March 2008, and that employer stated that he was a very good employee, whom they would consider rehiring.

### 3. The Sentence

The guidelines called for a term of 84-105 months after the departure, but I concluded that a sentence slightly below that range would suffice to satisfy the purposes of sentencing. Selling crack is a serious crime, but these were rather small sales, and the record contained no evidence of violence, weapon possession, threats or gang involvement. Therefore, a sentence below the range sufficed to provide just punishment.

The guideline recommendation in this case was driven by defendant's prior record, which resulted in a career offender designation. However, as the Sentencing Commission has noted, the career offender guideline can sometimes produce sentences greater than necessary in cases like this one, involving a low level street dealer. See United States v. Santoya, 493 F. Supp. 2d 1075, 1079-80 (E.D. Wis. 2007); United States v. Fernandez, 436 F. Supp. 2d 983, 989 (E.D. Wis. 2006) (citing U.S. Sentencing Commission, Fifteen Years of Guideline Sentencing 133-34 (Nov. 2004)). Although defendant had one conviction for a crime of violence, that case did not involve assaultive behavior or weapon possession. The other predicate involved a small amount of crack. And, the instant offense conduct was, as these cases go, relatively minor. See United States v. Williams, 435 F.3d 1350 (11th Cir. 2007) (affirming a sentence below the career offender guideline range where the instant offense was selling $350 worth of crack, and the priors were possession of cocaine with intent to sell or deliver and carrying a concealed firearm).

9

Under all of the circumstances, I found a sentence of 72 months sufficient but not greater than necessary. This sentence accounted for the overstatement caused by the career offender guideline, rewarded defendant for his cooperation, yet still provided a substantial prison sentence, one significantly greater than any term he previously served. For this reason, it sufficed to deter him from re-offending.

I ordered that this sentence run concurrently with defendant's state sentence after revocation. The guidelines recommend a consecutive sentence when the defendant was on supervision at the time he committed the federal offense, see U.S.S.G. § 5G1.3(c) & cmt. n.3(C), but concurrent time is reasonable when, as here, the revocation is based on the instant offense conduct. See United States v. Huusko, 275 F.3d 600, 603 (7th Cir. 2001). Given the length of the instant sentence, and the timing, the sentence would only be partially concurrent in any event.

## IV. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 72 months. Upon release, I ordered him to serve three years of supervised release, with a drug aftercare and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 31st day of July, 2009.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge